1

2

3

4

5

6

7                  IN THE UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9   LAUREL WARTLUFT,

10           Plaintiff,                  No. CIV-S-07-2023 KJM-GGH

11       vs.

12  FEATHER RIVER COMMUNITY
    COLLEGE,
13
             Defendant.
14  _____/

15  MICHELLE JAUREGUITO,

16           Plaintiff,                  No. CIV-S-06-2687 KJM-GGH

17       vs.

18  FEATHER RIVER COMMUNITY
    COLLEGE,
19
             Defendant.
20  _____/

21  PAUL THEIN,

22           Plaintiff,                  No. CIV-S-06-1777 KJM-GGH

23       vs.

24  FEATHER RIVER COMMUNITY            ORDER
    COLLEGE,
25
             Defendant.
26  _____/

1

1            This matter comes before the court upon defendant Feather River Community

2 College's consolidated motion for summary judgment or, alternately, partial summary judgment

3 with respect to the separate complaints filed by plaintiffs Thein, Jaureguito and Wartluft

4 ("plaintiffs"). (T-ECF 62, J-ECF 75, W-ECF 49, respectively.[1])  The court has decided this

5 motion without oral argument.  For the following reasons, defendant's motion is hereby granted

6 in part and this case is remanded.

7 I.    <u>FACTS AND PROCEDURAL HISTORY</u>

8            Thein, Jaureguito and Wartluft were employees of defendant.  Thein's

9 employment was terminated on June 30, 2006, when his employment contract expired and was

10 not renewed; Jaureguito resigned on April 7, 2006; and Wartluft's employment was terminated

11 on November 7, 2005.  Plaintiffs each brought complaints before the Department of Fair

12 Employment and Housing ("DFEH") and received right-to-sue notices.  (Thein's First Am.

13 Compl. ¶ 60, ECF 46; Jaureguito's First Am. Compl. ¶ 59, ECF 44; Wartluft's First Am. Compl.

14 ¶ 61, ECF 29.)  Plaintiffs subsequently filed complaints with the State Personnel Board ("SPB")

15 alleging retaliation in violation of the California Whistleblower Protection Act, CAL. GOV'T

16 CODE § 8547.3 and CAL. EDUC. CODE § 87160, et seq. Thein's complaint was submitted on June

17 19, 2006, Jaureguito's complaint was submitted on June 29, 2006, and Wartluft's complaint was

18 submitted on June 20, 2006.  (Thein's Req. for Jud. Not. Ex. 1, ECF 62-3; Jaureguito's Req. for

19 Jud. Not. Ex. 1, ECF 75-3; Wartluft's Req. for Jud. Not. Ex. 1, ECF 49-3.)

20            The SPB issued its decision on October 19, 2010, finding that plaintiffs did not

21 engage in protected activity under California Education Code § 87160 et seq., and that they were

22 performing their job duties, not acting adversely to defendant.  (Def.'s Statement of Undisputed

23 Facts ("DSUF") ¶¶ T-31, J-19, W-22; Pls.' Opp'n Statement of Undisputed Facts ("PSUF")

24 ¶¶ T-31, J-19, W-22.)  Specifically, the SPB rejected the Administrative Law Judge's proposed

25

26           [1] "T" references are for the docket in case no. Civ-S-06-1777, "J" references to case no. Civ-S-06-2687, and "W" references to case no. Civ-S-07-2023.

1  decision finding retaliation on July 21, 2009.[2]  (SPB Decision, Def.'s Req. Jud. Not. Ex. 3, T-

2  ECF 62-3.)  The SPB analyzed plaintiffs' claims using federal court precedent applying the

3  Federal Whistleblower Act of 1989 and ultimately found that communications made in the

4  course of employment are not protected.  (*Id.*)  Plaintiffs did not file requests for reconsideration

5  with the SPB within thirty days of service of the decision, nor have they filed a petition for writ

6  of mandate for review of the SPB's decision.[3]  (DSUF ¶¶ T-32 & 33, J-20 & 21, W-23 & 24;

7  PSUF ¶¶ T-32 & 33, J-20 & 21, W-23 & 24.)

8          Thein filed his complaint with this court on August 9, 2006.  (T-ECF 1.)

9  Defendant responded on September 18, 2006.  (T-ECF 8.)  Thein filed his amended complaint on

10  November 26, 2008.  (T-ECF 46.)  Defendant filed its answer on December 12, 2008.  (T-ECF

11  47.)

12          Jaureguito filed her complaint with this court on November 22, 2006.  (J-ECF 1.)

13  Defendant responded on January 8, 2007.  (J-ECF 11.)  Jaureguito filed an amended complaint

14  _____

15      [2] The court grants defendant's request that it take judicial notice of this decision and of
plaintiffs' underlying complaints in this proceeding.  (ECF 62-3.)  "Judicial notice is appropriate
for records and 'reports of administrative bodies.'" *United States v. 14.02 Acres*, 547 F.3d 943,
16  955 (9th Cir. 2008) (quoting *Interstate Natural Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385
(9th Cir. 1954)).  In addition, the court "may take judicial notice of court filings and other
17  matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th
Cir. 2005).

18

19      [3] Plaintiffs contend in their opposition to the present motion that the SPB decision is not
final.  (Pls.' Opp'n at 20.)  "Exhaustion of judicial remedies . . . is necessary to avoid giving
20  binding 'effect to the administrative agency's decision, because that decision has achieved
finality due to the aggrieved party's failure to pursue the exclusive judicial remedy for reviewing
administrative actions.'" *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 70 (2000) (quoting
21  *Briggs v. City of Rolling Hills Estates*, 40 Cal. App. 4th 637, 646 (1995)).  Regardless of whether
the statute of limitations has run for plaintiffs to petition the state court for writ of mandate, the
22  as yet unreviewed SPB action is a final decision for purposes of this court's exercise of
jurisdiction.  *See Briggs,* 40 Cal. App. 4th at 648 (discussing *Miller v. County of Santa Cruz*, 39
23  F.3d 1030 (9th Cir. 1994): "The court cited two of its prior decisions stating that the aggrieved
party, having the opportunity to seek judicial review of administrative action, cannot avoid
24  giving preclusive effect to the administrative action by simply foregoing the right to review. [] 'It
is Miller's election to pursue his claim initially in an administrative forum, and to forego his
25  right to seek judicial review in state court, which requires us to determine whether that decision
is binding on all that was, or could have been, determined there.'" (quoting *Miller*, 39 F.3d at
26  1034 n.3)).

1   on November 26, 2008.  (J-ECF 44.)  Defendant filed its answer on December 12, 2008.  (J-ECF

2   45.)  Defendant filed a motion for summary judgment on October 8, 2010.  (J-ECF 67.)

3   Jaureguito filed an opposition to Defendant's motion on October 21, 2010.  (J-ECF 68.)

4   Defendant filed its reply on October 29, 2010.  (J-ECF 69.)  The court vacated Defendant's

5   motion on November 1, 2010.  (J-ECF 72.)

6           Wartluft filed her complaint with this court on September 26, 2007.  (W-ECF 2.)

7   Defendant responded on November 13, 2007.  (W-ECF 10.)  Wartluft filed her amended

8   complaint on November 26, 2008.  (W-ECF 29.)  Defendant filed its answer on December 12,

9   2008.  (W-ECF 30.)

10          These cases were related on October 2, 2007.  (T-ECF 23, J-ECF 19, W-ECF 7.)[4]

11          In their amended complaints, Thein and Jaureguito allege three causes of action:

12   1) unlawful retaliation and discrimination in violation of Title IX; 2) retaliation in violation of

13   the California Fair Employment and Housing Act ("FEHA"); and 3) failure to prevent

14   discrimination and harassment in violation of FEHA.  Wartluft alleges 1) and 2) above, as well

15   as sexual orientation discrimination in violation of FEHA, gender discrimination in violation of

16   FEHA, and failure to pay compensation at the time of discharge or termination of employment in

17   violation of California Labor Code Sections 201 and 203.[5]  Plaintiffs seek: 1) a judgment

18   awarding them back pay, front pay, damages for emotional distress and compensatory damages;

19   2) an order reinstating their employment with Defendant; 3) attorneys' fees and costs; and

20   4) such other relief as the court deems appropriate.  Wartluft also seeks a judgment awarding her

21   all unpaid compensation together with prejudgment interest and waiting time penalties in the

22   amount of thirty days' salary.

23

24          [4] Plaintiffs also brought actions in Plumas County Superior Court, on November 7, 2006.
     (Jul. 16, 2008 Order Denying Mot. to Stay at 4, T-ECF 39.)  These state court actions are not the
     subject of the present motion and therefore will not be discussed here.

25

26          [5] The present motion does not challenge Wartluft's Labor Code claims; therefore, these
     claims will not be evaluated by the court.

1            Defendant filed the present consolidated motion for summary judgment or,

2 alternately, partial summary judgment, on January 21, 2011, contending that it is entitled to

3 summary judgment because plaintiffs' Title IX and FEHA claims are precluded by the SPB's

4 decision.  Plaintiffs filed their oppositions on March 2, 2011.  (T-ECF 66, J-ECF 79, W-ECF

5 53.)  Defendant filed its reply on March 9, 2011.  (T-ECF 67, J-ECF 80, W-ECF 54.)[6]

6 II.  ANALYSIS

7            A.       Summary Judgment Standard

8            A court will grant summary judgment "if . . . there is no genuine dispute as to any

9 material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

10 The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

11 resolved only by a finder of fact because they may reasonably be resolved in favor of either

12 party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[7]

13            The moving party bears the initial burden of showing the district court "that there

14 is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477

15 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that

16 there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

17 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts

18 of materials in the record . . .; or show [] that the materials cited do not establish the absence or

19 presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

20 support the fact."  FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

21 nonmoving party] must do more than simply show that there is some metaphysical doubt as to

22

23       [6] When citing to defendant's consolidated motion, plaintiffs' opposition, and defendant's
reply, the court will reference docket numbers from Thein's docket only, throughout the
remainder of this order.

24

25       [7] Rule 56 was amended, effective December 1, 2010.  However,  it is appropriate to rely
on cases decided before the amendment took effect, as "[t]he standard for granting summary
judgment remains unchanged."  FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010

26 amendments.

1    the material facts"). Moreover, "the requirement is that there be no *genuine* issue of *material*

2    fact . . . . Only disputes over facts that might affect the outcome of the suit under the governing

3    law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48

4    (emphasis in original).

5          In deciding a motion for summary judgment, the court draws all inferences and

6    views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

7    587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a

8    whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

9    issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities*

10    *Service Co.*, 391 U.S. 253, 289 (1968)).

11          B.      Preclusive Effect of State Administrative Decisions

12          As an initial matter, the court must determine whether the SPB's decision can

13    have general preclusive effect with respect to the present matter. The court finds that it can.

14          The Supreme Court has "long favored application of the common-law doctrines

15    of collateral estoppel . . . and res judicata . . . to those determinations of administrative bodies

16    that have attained finality." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108

17    (1991). "'When an administrative agency is acting in a judicial capacity and resolves disputed

18    issues of fact properly before it which the parties have had an adequate opportunity to litigate,

19    the courts have not hesitated to apply res judicata to enforce repose.'" *Id*. (quoting *United States*

20    *v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). However, "[a]lthough administrative

21    estoppel is favored as a matter of general policy, its suitability may vary according to the specific

22    context of the rights at stake, the power of the agency, and the relative adequacy of agency

23    procedures." *Id*. at 110. Significant for the present motion, "[t]he Ninth Circuit [gives]

24    preclusive effect even to unreviewed administrative findings, whether made by state or

25    municipal agencies." *Clemes v. Del Norte County Unified Sch. Dist.*, 1995 U.S. Dist. LEXIS

26    14298, *11 (N.D. Cal. Sep. 19, 1995) (citing *Miller*, 39 F.3d at 1032-33).

1    Plaintiffs contend that an unreviewed state administrative decision does not have

2  preclusive effect as to state whistleblower claims and that as a result the SPB decision can have

3  no preclusive effect in this case.  (*See* Pls.' Opp'n at 15-17.)  Plaintiffs' contentions regarding

4  the non-preclusive effect of unreviewed state administrative decisions on state whistleblower

5  claims are irrelevant to the question before court regarding preclusion of FEHA and Title IX

6  claims.

7    The SPB decision can have preclusive effect with respect to plaintiffs' FEHA

8  claim.  In *Johnson v. City of Loma Linda*, the California Supreme Court found that "when . . . a

9  public employee pursues administrative civil service remedies, receives an adverse finding, and

10 fails to have the finding set aside through judicial review procedures, the adverse finding is

11 binding on discrimination claims under the FEHA."  24 Cal. 4th at 76; *see also McDonald v.*

12 *Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 113 (2008).

13    The determination of the SPB decision's preclusive effect, if any, on plaintiffs'

14 Title IX claim is more difficult.  "Title IX does not disclose any specific congressional intent

15 about how federal courts should treat unreviewed decisions by a state agency that pertain to a

16 lawsuit under Title IX. [] In the absence of any specific legislative instruction, the federal

17 common law of claim and issue preclusion will apply."  *Waid v. Merrill Area Pub. Sch.*, 91 F.3d

18 857, 864 (7th Cir. 1996), *rev'd on other grounds*, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S.

19 246 (2009); *see also Solimino*, 501 U.S. at 108.  Title IX provides that "[e]ach federal

20 department and agency which is empowered to extend Federal financial assistance to any

21 education program or activity"  is authorized to issues rules, regulations, and orders to effectuate

22 the objectives of

23 /////

24 /////

25 /////

26 /////

1  Title IX.  20 U.S.C. § 1682.  Department or agency action taken in accordance with this

2  provision is

> subject to such judicial review as may otherwise be provided by
> law for similar action taken by such department or agency on other
> grounds.  In the case of action, not otherwise subject to judicial
> review, terminating or refusing to grant or to continue financial
> assistance . . . any person aggrieved . . . may obtain judicial review
> of such action . . . and such action shall not be deemed committed
> to unreviewable agency discretion . . . .

7  20 U.S.C. § 1683.  Thus, no federal department or agency action taken in accordance with these

8  regulations to determine whether to terminate or continue financial assistance precludes judicial

9  review.  However, "these agency decisions . . .  will not necessarily address the questions about

10  whether a particular individual has or has not been the subject of intentional discrimination."

11  *Waid*, 91 F.3d at 864.  The statute specifically states that the agency decisions it is discussing are

12  those regarding funding.  Thus, there is no language in Title IX directly on point.  Rather, the

13  Court's analysis in *University of Tennessee v. Elliott*, finding that unreviewed state

14  administrative proceedings have preclusive effect with respect to 42 U.S.C. § 1983 claims,

15  appears by analogy to also apply here.  478 U.S. 788, 796-99 (1986).  Like 42 U.S.C. § 1983 and

16  unlike Title VII, "'[nothing] in the language [of Title IX] . . . remotely expresses any

17  congressional intent to contravene the common-law rules of preclusion . . . .'"  *Id*. at 797

18  (quoting *Allen v. McCurry*, 449 U.S. 90, 97-98 (1980)).

19         Having found that the SPB's decision can have preclusive effect with respect to

20  the present cases, the court turns to Defendant's specific contentions regarding the applicability

21  of claim and issue preclusion in this case.

22         C.      Res Judicata

23                 i.      Standard

24         "In California, res judicata precludes a plaintiff from litigating a claim if: the

25  claim relates to the same 'primary right' as a claim in a prior action, the prior judgment was final

26  and on the merits, and the plaintiff was a party or in privity with a party in the prior action."

1  *Trujillo v. County of Santa Clara*, 775 F.2d 1359, 1366 (9th Cir. 1985) (also finding "that state

2  principles of preclusion govern").

3             [The primary right theory] provides that a 'cause of action' is
            comprised of a primary right of the plaintiff, a corresponding
4           'primary duty' of the defendant, and a wrongful act by the
            defendant constituting a breach of that duty ... The most salient
5           characteristic of a primary right is that it is indivisible: the
            violation of a single primary right gives rise to but a single cause
6           of action ... A pleading that states the violation of one primary
            right in two causes of action contravenes the rule against 'splitting'
7           a cause of action ... [] It is invoked most often when a plaintiff
            attempts to divide a primary right and enforce it in two suits.

8

9  *Teran v. Hagopian*, 2009 U.S. Dist. LEXIS 28682, *43 (E.D. Cal. Mar. 31, 2009) (quoting

10 *Grisham v. Phillip Morris U.S.A., Inc.,* 40 Cal. 4th 623, 641-42 (2007)).

11            ii.     Application

12            Defendant contends that plaintiffs are barred by res judicata from proceeding with

13 their Title IX and FEHA claims.  Specifically, defendant maintains that "a plaintiff may not split

14 a single cause of action or relitigate the same cause of action on a different legal theory or seek

15 different relief." (Def.'s Mot. at 13.)  Defendant contends that "[a] review of the whistleblower

16 complaints, SPB decision, operative complaints herein and separate statement of facts establish

17 that *res judicata* is applicable. The underlying facts allegedly supporting both the SPB action and

18 the current matter ***are identical***; involving the same parties, witnesses and evidence -- the only

19 difference are the legal theories relied upon." [sic] (*Id*. at 15 (emphasis in original).)  It asserts

20 that the primary rights before both the SPB and this court are "the right to employment and right

21 to be free of employment retaliation/discrimination."[8]  (*Id*.)

22            Plaintiffs maintain that the doctrine of res judicata is inapplicable.  Specifically,

23 they contend that the SPB's dismissal of plaintiffs' complaints does not preclude a conclusion in

24

25        [8] In its reply, defendant contends that the primary right of all three causes of action is to
   be free from retaliation.  (Def.'s Reply at 6.)  For purposes of this order, it is unnecessary for the
26 court to address whether these form one or multiple primary rights.

1 favor of plaintiffs in the present case because the SPB did not consider whether plaintiffs

2 engaged in protected activity under Title IX or FEHA.  (Pls.' Opp'n at 14, 15.)  Furthermore,

3 plaintiffs contend that the whistleblower statutes protect their primary right to continued

4 employment while Title IX and FEHA protect their primary right to be free of retaliation for

5 opposing discrimination.  (*Id*. at 18.)  In addition, plaintiffs argue that Wartluft's FEHA claims

6 are not precluded because they are based on her status as a woman and perceived sexual

7 orientation while her SPB action arose from harm based on her complaints regarding violations

8 of law.  (*Id*. at 19.)

9          Defendant relies primarily on *Takahashi v. Board of Education*, 202 Cal. App. 3d

10 1464 (1988) and *Peterson III v. State of California Department of Corrections and*

11 *Rehabilitation*, 451 F. Supp. 2d 1092 (E.D. Cal. 2006), to support its contention that res judicata

12 is applicable in this case.  *Takahashi* is distinguishable because, in that case, the administrative

13 agency determined that the plaintiff's termination was valid and plaintiff failed to raise defenses

14 that she later raised in a separate state court action.  202 Cal. App. 3d at 1477.  The court relied

15 in part on the fact that the substance of the agency's decision precluded the plaintiff's action.  *Id*.

16 Importantly, the underlying administrative proceeding in *Takahashi* was before the Commission

17 on Professional Competence; the very specific purpose of such a hearing is essentially "to

18 determine if cause existed to terminate . . . ."  *Id*. at 1470 n.5.  *Peterson III*, however, is on point.

19 In that case, the plaintiff filed a race discrimination claim with the SPB, which found that he had

20 failed to establish the prima facie elements of race discrimination.  *Peterson III*, 451 F. Supp. 2d

21 at 1098.  The plaintiff did not seek judicial review and instead filed a complaint in state court

22 alleging causes of action under Title VII and 42 U.S.C. § 1981.  The court found that the

23 plaintiff's claims were barred by the prior SPB determination as the primary right involved in

24 both claims was the right to be free from employment discrimination.  *Id*. at 1108 n.4.

25          Plaintiffs, on the other hand, rely on *George v. California Unemployment*

26 *Insurance Appeals Board*, 179 Cal. App. 4th 1475 (2009), for their proposition that their FEHA

1   and Title IX claims are not precluded here.  The plaintiff in *George* brought a claim for

2   retaliation in violation of FEHA before the DFEH, before she was suspended, and later brought a

3   claim alleging her discipline was unwarranted before the SPB.  179 Cal. App. 4th at 1480.  She

4   did not allege that her discipline was retaliatory in her SPB complaint.  *Id.*  The SPB concluded

5   that one of her suspensions was unsupported but that her other suspension was proper.  *Id.*  After

6   her second suspension, she filed a second claim with the DFEH, alleging her suspensions were

7   retaliatory.  *Id.* at 1481.  The plaintiff was then suspended a third time, after which she brought a

8   third claim to the SPB, which found that one of three allegations on which her suspension was

9   based were just.  *Id.*  The *George* court ultimately found that "[t]he primary right protected by

10  the state civil service system is the right to continued employment, while the primary right

11  protected by FEHA is the right to be free from invidious discrimination and from retaliation for

12  opposing discrimination" and that res judicata was inapplicable.  *Id.* at 1483.  Unlike in *George*,

13  here plaintiffs did not simply contest the bases for their adverse employment actions before the

14  SPB; rather, they specifically alleged retaliation.  Moreover, the *George* court relied in part on

15  *Ruiz v. Department of Corrections* in reaching its decision.  In *Ruiz*, the court was "mindful of

16  the practical considerations state employees face upon the decision to file a claim. To conclude

17  that state employees must seek review of their discrimination claims through the Board,

18  regardless of their decision to pursue that claim with other agencies, places a burden upon those

19  aggrieved individuals that private employees do not share." 77 Cal. App. 4th at 899.  In this

20  respect, *Ruiz* does not apply here.  Rather, this matter presents the court with the scenario,

21  whereby plaintiffs were required to exhaust administrative remedies under FEHA by obtaining a

22  right-to-sue determination from the DFEH, *see Rodriguez v. Airborne Express*, 265 F.3d 890,

23  896 (9th Cir. 2001), and also required to file complaints with the SPB as a prerequisite to

24  bringing a claim for damages under the CWPA.  CAL. GOV'T CODE § 8547.8(c).  Neither party

25  has cited to case law that is directly on point and there appears to be no such precedent.  It is

26  important to note that nothing precluded plaintiffs from raising their FEHA and Title IX claims

1  before the SPB.  *See Ruiz*, 77 Cal. App. 4th at 900 ("state employees may pursue their claims of

2  employment discrimination with either the Board or the DFEH or both").  In fact, plaintiffs made

3  the conscious decision to initiate the SPB proceedings after the DFEH had issued them right-to-

4  sue notices.  (*Compare* Thein's FAC ¶ 60 *with* Thein's Req. for Jud. Not. Ex. 1; *compare*

5  Jaureguito's FAC ¶ 59 *with* Jaureguito's Req. for Jud. Not. Ex. 1; *compare* Wartluft's FAC ¶ 61

6  *with* Wartluft's Req. for Jud. Not. Ex. 1.)  As the California Supreme Court found in *Murray v.*

7  *Alaska Airlines, Inc.*, "judicial exhaustion may arise when a party initiates and takes to decision

8  an administrative process–whether or not the party was required, as a matter of administrative

9  exhaustion, to even begin the administrative process in the first place."  50 Cal. 4th 860, 867

10  (2010) (internal quotation omitted).  In *Johnson*, the same court found that "[r]efusing to give

11  binding effect to the findings of administrative agencies in quasi-judicial proceedings would . . .

12  undermine the efficacy of such proceedings."  24 Cal. 4th at 72.

13  "A primary right is defined as 'the right to be free from the particular unlawful

14  conduct.'"  *Yanke v. City of Oakland*, 2010 U.S. Dist. LEXIS 30627, at *12 (N.D. Cal. Mar. 30,

15  2010) (quoting *Sawyer v. First City Fin. Corp.*, 124 Cal. App. 3d 390, 399-400 (1981)).  "In

16  determining the primary right, 'the significant factor is the harm suffered.'"  *Id*. (quoting

17  *Agarwal v. Johnson*, 25 Cal. 3d 932, 955 (1979)).  The primary right in FEHA and Title IX

18  retaliation claims is two-fold:  to be free of retaliation and discrimination.  "Retaliation against a

19  person because that person has complained of sex discrimination is [a] form of intentional sex

20  discrimination encompassed by Title IX's private cause of action."  *Jackson v. Birmingham Bd.*

21  *of Educ.*, 544 U.S. 167, 173 (2005).  While "[i]n other contexts, [the United States Supreme

22  Court] recognized that protection from retaliation is separate from direct protection of the

23  primary right and serves as a prophylactic measure to guard the primary right," the Court has

24  determined that Title IX retaliation is equivalent to discrimination.  *See id.* at 189 (Thomas, J.,

25  dissenting); *cf. id.* at 174 (majority).  Similarly, the "primary right protected by FEHA is the

26  right to be free from invidious discrimination and from retaliation for opposing discrimination."

1   *George*, 179 Cal. App. 4th at 1483.  Plaintiffs contend that this court should be persuaded by

2   *George* that a different primary right was involved in the SPB proceeding than in the present

3   matter.  Although the court in *George* found that "[t]he primary right protected by the state civil

4   service system is the right to continued employment," 179 Cal. App. 4th at 1483, the *George*

5   plaintiff's claim before the SPB was that her discipline was unwarranted, with no discussion of

6   retaliation.  Unlike in *George*, as noted above, plaintiffs' claims here were specifically for

7   retaliation*,* alleging the same facts and the same harm that they have alleged before this court;

8   moreover, the purpose of the state whistleblower statutes is to prevent retaliation.  *See* CAL.

9   GOV'T CODE § 8547.1 ("The Legislature finds and declares that state employees should be free

10   to report waste, fraud, abuse of authority, violation of law, or threat to public health without fear

11   of retribution."); CAL. EDUC. CODE § 87161 ("It is the intent of the Legislature that community

12   college employees and other persons disclose . . . improper governmental activities.").

13         As noted, the relevant factor here is "'the harm suffered.'"  *Yanke*, 2010 U.S.

14   Dist. LEXIS 30627, at \*12 (quoting *Agarwal v. Johnson*, 25 Cal. 3d at 955).  Plaintiffs' claims

15   before the SPB and before this court involve precisely the same harm and thus the same primary

16   right: in Thein's case, the June 30, 2006 expiration without renewal of his employment contract;

17   in Jauregito's case, the April 7, 2006 resignation; and in Wartluft's case, the November 7, 2005

18   termination.  Each plaintiff's harm is alleged to have been retaliatory.  It is irrelevant that

19   plaintiffs "'plead[] different theories of recovery, seek[] different forms of relief . . . .'"  *Yanke*,

20   2010 U.S. Dist. LEXIS 30627, at \*14 (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d

21   1170, 1174 (1983)).  Plaintiffs here could have brought their claims in the SPB proceeding, but

22   chose not to:  "Under basic principles of res judicata, a prior adjudication bars claims that were

23   brought or could have been brought in the prior action."  *Id*. at \*27.  As such, the doctrine of res

24   judicata precludes plaintiffs' Title IX and FEHA claims alleged in the complaints before this

25   court.  The court's determination that plaintiffs' FEHA claims are precluded by the doctrine of

26   res judicata does not extend to Thein's and Jauregito's claims for failure to prevent

1   discrimination and harassment in violation of FEHA or to Wartluft's claims for sexual

2   orientation and gender discrimination in violation of FEHA.

3           As plaintiffs' Title IX claims are precluded, the court will dismiss this case for the

4   reasons discussed below and therefore finds it unnecessary to address the parties' arguments

5   regarding collateral estoppel.

6           D.      Supplemental Jurisdiction

7           In light of the above, the claims remaining in the present action are state law

8   claims: Thein's and Jaureguito's third claims for failure to prevent discrimination and

9   harassment in violation of the FEHA; and Wartluft's second claim for sexual orientation

10  discrimination in violation of FEHA, third claim for gender discrimination in violation of FEHA,

11  and fifth claim for failure to pay compensation at the time of discharge or termination of

12  employment in violation of California Labor Code sections 201 and 203.  Thus, this court no

13  longer retains federal question jurisdiction.  28 U.S.C. § 1331.  28 U.S.C. § 1367(c) states:

14          The district courts may decline to exercise supplemental
            jurisdiction over a claim . . . if– (1) the claim raises a novel or
15          complex issue of State law, (2) the claim substantially
            predominates over the claim or claims over which the district court
16          has original jurisdiction, (3) the district court has dismissed all
            claims over which it has original jurisdiction, or (4) in exceptional
17          circumstances, there are other compelling reasons for declining
            jurisdiction.

18

19  "[A] federal court should consider and weigh in each case, and at every stage of the litigation,

20  the values of judicial economy, convenience, fairness, and comity in order to decide whether to

21  exercise jurisdiction over a case brought in that court involving pendent state-law claims. When

22  the balance of these factors indicates that a case properly belongs in state court, as when the

23  federal-law claims have dropped out of the lawsuit in the early stages and only state-law claims

24  remain, the federal court should decline the exercise of jurisdiction by dismissing the case

25  without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *Mine*

26  *Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966)).  The three cases before the court are not in their

1 early stages.  However, balancing "the policy considerations that have spawned the doctrine of

2 pendency and the countervailing policy of federalism," *Rosado v. Wyman*, 397 U.S. 397, 403

3 (1970), weighs against the exercise of supplemental jurisdiction here.  The "extent of the

4 investment of judicial energy," *id*., does not weigh in favor of the exercise of supplemental

5 jurisdiction; though the court has decided a motion to stay (T-39, J-37, W-22) and now the

6 present motions for summary judgment, the remainder of the court's efforts in this case has been

7 taken up with modifications of the status (pretrial scheduling) order.  Moreover, any discovery

8 conducted can be utilized in state court.  Furthermore, "the character of the claim," *Rosado*, 397

9 U.S. at 403, weighs against exercising supplemental jurisdiction; as noted, the only claims

10 surviving are state law claims.

11            Here, the court exercises its discretion to decline supplemental jurisdiction over

12 the remaining state-law causes of action.  *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S.Ct.

13 1862, 1866 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction

14 after dismissing every claim over which it had original jurisdiction is purely discretionary.");

15 *Gini v. Las Vegas Metro. Police Dept.*, 40 F.3d 1041, 1046 (9th Cir. 1994) ("'In the usual case in

16 which federal-law claims are eliminated before trial, the balance of factors . . . will point toward

17 declining to exercise jurisdiction over the remaining state law claims.'" (quoting *Schneider v.*

18 *TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991))); *see also Wren v. Sletten Construction Co.*, 654

19 F.2d 529, 536 (9th Cir. 1981) ("When the state issues apparently predominate and all federal

20 claims are dismissed before trial, the proper exercise of discretion requires dismissal of the state

21 claim.").

22 III.  CONCLUSION

23            For the foregoing reasons, defendant's motion for summary judgment or,

24 alternatively, partial summary judgment, is GRANTED IN PART as follows:

25            1.  Defendant's motion is granted as to plaintiffs' claims for unlawful retaliation

26 in violation of Title IX and FEHA;

1        2.  The court declines to exercise supplemental jurisdiction as to the remaining

2   state law claims; they are hereby dismissed with leave to refile in state court; and

3        3.  This case is CLOSED.

4        IT IS SO ORDERED.

5   DATED:  October 7, 2011.

6

7                                          _____
                                           UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26